**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**MICHAEL MINGO,**

          **Plaintiff,**

                   **9:14-CV-0235**
 v.                   **(MAD/TWD)**

**BRIAN FISCHER, et al.,**

          **Defendants.**

---

**APPEARANCES:**        **OF COUNSEL:**

**MICHAEL MINGO**
**09-A-3655**
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411
Plaintiff *pro se*

**MAE A. D'AGOSTINO
United States District Judge**

## DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Michael Mingo commenced this action by filing a pro se civil rights complaint in the Western District of New York ("Western District"). Dkt. No. 1. Plaintiff also sought leave to proceed *in forma pauperis*. Dkt. No. 4 ("IFP Application"). Chief United States District Judge William M. Skretny of the Western District granted Plaintiff's IFP Application, and upon review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, liberally construed the complaint to allege claims against Defendants Brian Fischer, Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"); Andrea W. Evans, New York State Division of Parole; and James Ferro, with respect to violations of plaintiff's constitutional rights that occurred at Cayuga Correctional Facility ("Cayuga C.F.") and Auburn Correctional Facility ("Auburn C.F."). Dkt. No. 5.

Chief Judge Skretny also construed the complaint to allege violations of Plaintiff's constitutional rights by unnamed staff employed at Orleans Correctional Facility ("Orleans C.F."). *Id.* By Decision and Order dated August 2, 2013, Judge Skretny found that because the Cayuga C.F. and Auburn C.F. are located in the Northern District of New York ("Northern District"), the claims arising at those facilities were "deemed to arise under the jurisdiction" of the Northern District Court and those claims were "ordered severed from [the Western District] action and transferred" to the Northern District pursuant to 28 U.S.C. § 1406(a).[1] Dkt. No. 5.

Presently before the Court is that part of Plaintiff's complaint relating to claims which arose in the Northern District.[2]

## II. DISCUSSION

**A.  Standard of Review**

Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's

---

[1] By clerical error in the Western District of New York, Plaintiff's Cayuga and Auburn Correctional Facility claims were not transferred to this District until March 4, 2014, almost seven months after which the transfer was supposed to occur. *See* Dkt. Nos. 1, 5, 11.

[2] The Western District retained jurisdiction over the claims which arose at Orleans C.F. Dkt. No. 5. Those claims will not be considered by this Court.

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

2

responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis*. *See id*.

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding that section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

**B.     Sufficiency of the Complaint**

The relevant facts are set forth as alleged by Plaintiff in his complaint.[4] On November 30, 2010, while Plaintiff was incarcerated at Auburn C.F., he was attacked from behind by unknown assailants for leaving the bloods gang. Dkt. No. 1 at 2. Plaintiff suffered a cut on the side of his face. *Id.* The attackers "got away." *Id.* While Plaintiff was being escorted to the infirmary for treatment of his injuries, one of the attackers tried to attack Plaintiff again and Plaintiff "was forced to defend himself." *Id*. Plaintiff received two misbehavior reports, one for an altercation with the unidentified inmate and the other charging Plaintiff with assault on an officer. *Id.* At the subsequent disciplinary hearing, Plaintiff was found not guilty for the assault on an officer, but found guilty of the remaining charge "all without video" and upon "fabricated evidence." *Id*. On December 17, 2010, M. Mazolli

---

[4] The Court will not review the facts relating to claims that were retained by the Western District.

4

(whom Plaintiff does not name as a Defendant) sentenced Plaintiff to serve time in the Special Housing Unit ("SHU"). *Id*. Plaintiff remained in SHU at Auburn C.F. from December 17, 2010, until December 21, 2010, when he was transferred to Cayuga C.F. *Id*.

Upon his transfer to Cayuga C.F., Plaintiff "experienced verbal abuse and mental abuse due to his religion and diet" which violated a New York State DOCCS Directive that requires staff to refrain "from disparaging in any manor [*sic*] . . . the doctrines, beliefs[,] practices or teachings of any other religious faith. . . ." *Id*. "After being called an asshole" by correctional officers Bennett and Hatsfeild (who are not named as defendants), Plaintiff "was set up receiving an additional 15 month[s]" in SHU. *Id*. Plaintiff was "convicted of charges that have no merit." *Id*. Plaintiff was then attacked by inmates "who were paid with food or contraband or stolen inmate property by staff." *Id*. Plaintiff expressed his "concerns for his life" to Superintendent Stallone, but was ignored. *Id*. On July 28, 2011, Plaintiff was transferred to Orleans C. F. *Id*.

As an initial matter, in light of Plaintiff's *pro se* status, and because he asserts allegations of wrongdoing against them, the Court will direct the Clerk to add the following as Defendants to this action: M. Mazzoli, Auburn Correctional Facility; Bennett, Correctional Officer, Cayuga Correctional Facility; Hatsfeild, Correctional Officer, Cayuga Correctional Facility; and Stallone, Superintendent, Cayuga Correctional Facility.

Read liberally, the Court construes the complaint to assert the following claims: (1) false misbehavior report claims; (2) a Fourteenth Amendment due process claim against Defendant Mazzoli; (3) verbal harassment claims; (4) a First Amendment religion claim; (5) a claim that staff at Cayuga C.F. violated a DOCCS Directive; (6) an Eighth Amendment conditions-of-confinement claim; and (7) a claim against Defendant Stallone.

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

The personal involvement of a defendant is a prerequisite for the assessment of liability in a Section 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable to these claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). Thus, a plaintiff must demonstrate "'a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). Any complaint that fails to allege personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations and citations omitted).

### *1. Defendants Fischer, Evans, and Ferro*

Plaintiff only mentions Defendants Fischer, Evans, and Ferro in the caption of the complaint or in the section of the complaint wherein he lists and identifies the defendants. Dkt. No. 1

at 1. Plaintiff has alleged no facts in the body of the complaint to plausibly suggest that Defendants Fischer, Evans, or Ferro were personally involved in any alleged constitutional violation. In the absence of factual allegations sufficient to plausibly suggest that these individuals were personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against them. *See Cipriani v. Buffardi*, No. 9:06-CV-0889 (GTS/DRH), 2007 WL 607341, \*1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff") (citation omitted).

### *2. False Misbehavior Report*

It is well settled that filing false or unfounded misbehavior charges against an inmate does not "give rise to a per se constitutional violation actionable under section 1983." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report"); *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986). Similarly, courts have held that the creation of false records or the entry of false information in an inmate's records does not give rise to a constitutional violation. *See, e.g., Bloomfield v. Wurzberger*, No. 9:08-CV-0619 (GLS/RFT), 2009 WL 3335892, \*5 (N.D.N.Y. Oct. 15, 2009) (filing of a false entry in an inmate's medical records, without more, does not constitute a constitutional violation); *Cruz v. Lashway*, No. 9:06-CV-0867 (GTS/RFT), 2009 WL 1734549, \*8 (N.D.N.Y. June 18, 2009) (same); *Benitez v. Locastro*, No. 04-CV-423 (NAM/RFT), 2008 WL 4767439, \*11 (N.D.N.Y. Oct. 29, 2008) (citation and footnote omitted) (same).

Thus, Plaintiff's claim that he received false misbehavior reports is dismissed with prejudice

pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### *3. Fourteenth Amendment Due Process*

To successfully establish a claim under section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *See DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citation omitted).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For example, the Second Circuit has refused to set a bright line rule on when confinement becomes atypical. Instead, "in order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement and to identify with specificity the facts upon which [their] conclusions [are] based." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citations omitted).

The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*.[5] The Second Circuit generally takes the position that normal confinement in a

---

[5] The Second Circuit has held that it is the length of the actual punishment that is relevant in determining whether a period of SHU confinement implicates a cognizable liberty interest, and, not the length of the sentence imposed. *Scott v. Albury*, 156 F.3d 283, 287-88 (2d Cir. 1998) ("No right to due

8

segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)). The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey*, 197 F.3d at 585. In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. *Id.*

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563- 67 (1974)) (other citations omitted). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)) (other citations omitted).

Here, while Plaintiff claims that Defendant Mazzoli denied him due process at a disciplinary hearing, the complaint does not set forth factual allegations which plausibly suggest the basis for this claim. Thus, Plaintiff does not clearly allege that he was denied any of the procedural safeguards to which he was entitled. Moreover, while Plaintiff was sentenced to SHU confinement, he does not indicate the length of his sentence, which is a critical component of the Fourteenth Amendment due process inquiry. Additionally, Plaintiff does not allege sufficient facts which plausibly suggest that the

---

process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin [v. Conner]* to require that we look to actual punishment in making this determination").

conditions of his disciplinary confinement were in any way "abnormal" or "unusual."

Based upon the foregoing, the Court finds that the complaint does not allege facts sufficient to plausibly suggest that Defendant Mazzoli disciplined Plaintiff in violation of his right to due process. Thus, Plaintiff's Fourteenth Amendment due process claim against Defendant Mazzoli is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### *4. Verbal Harassment*

Allegations of verbal harassment are insufficient to support a Section 1983 claim. *See Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged.")); *see also Hendricks v. Boltja*, 20 Fed. Appx. 34, 36 (2d Cir. 2001) (holding that "verbal harassment was not actionable" in case where officer, among other things, told the inmate to "get [his] black ass out of the library" and threatened to "smash [his] head open"); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

Insofar as plaintiff alleges that unidentified staff at Cayuga C.F. verbally harassed him on account of his religion and diet, or that Defendants Bennett and Hatsfeild called him an asshole, those claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to section 1983.

### *5. First Amendment Religion Claim*

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988) (citations omitted.)

Apart from his bald assertion that he suffered verbal and mental abuse when unidentified staff at Cayuga C.F. made disparaging remarks about his religion, Plaintiff fails to provide any information about, or even to identify by name, his religion or to explain how these disparaging remarks interfered with the free exercise of his sincerely held religious beliefs. Plaintiff has failed to allege any facts to plausibly suggest that his First Amendment free exercise rights were violated. Indeed, Plaintiff merely alleges verbal harassment in this regard, which as noted above, *see* Part II.B.4., fails to state a claim upon which relief may be granted under Section 1983.

Thus, Plaintiff's First Amendment Free Exercise claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

11

### *6. Violation of DOCCS Directive*

A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations or state law. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim). "A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) (Suddaby, J.) (collecting cases); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . . ."); *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles).

Therefore, Plaintiff's claim that unidentified staff violated a DOCCS Directive by disparaging Plaintiff's religious beliefs is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to section 1983.

### *7. Eighth Amendment Conditions-of-Confinement*

Prison officials have a duty, under the Eighth Amendment, "'to protect inmates from violence at the hands of other inmates.'" *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A prisoner injured while in custody may recover for violation of his Eighth Amendment rights if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a "substantial risk of serious harm" or from the official's deliberate

12

indifference to that risk. *See Farmer* at 834; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).

Plaintiff alleges that he was "attacked . . . by inmates who were paid with food or contraband" by unidentified staff. Dkt. No. 1 at 2. Plaintiff's conclusory allegations in this regard does not contain sufficient facts to plausibly suggest an Eighth Amendment conditions-of-confinement claim. In any event, even if the Court were to find these allegations to be sufficient, Plaintiff does not allege that any of the Defendants were personally involved in the alleged misconduct.

Therefore, Plaintiff's Eighth Amendment conditions-of-confinement claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### *8. Supervisory Claim Against Defendant Stallone*

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *See Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . . [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights"). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual (1) has directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal,

has failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986).[6]

Plaintiff alleges that he "voiced his concerns for his life to Superintendent Stallone" but "his fears and worries were ignored." Dkt. No. 1 at 2. Construed liberally, Plaintiff appears to claim that Defendant Stallone failed to protect him from harm, or that after receiving a report, failed to correct staff misconduct which allegedly placed Plaintiff in danger. The Court recognizes that Plaintiff is proceeding *pro se* and that this requires the Court to treat his pleadings with a certain degree of liberality; despite this, Plaintiff's conclusory allegation against Defendant Stallone is wholly insufficient to state a plausible claim against him.

Plaintiff's claim against Defendant Stallone is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

---

[6] Whether all five *Colon* factors for supervisor liability remain available in light of the Supreme Court's decision in *Iqbal*, 556 U.S. 662, has been debated by the district courts in this circuit. *See, e.g., Pearce v. Estate of Longo*, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), *rev'd in part on other grounds sub nom., Pearce v. Labella*, 473 Fed. Appx. 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated *Iqbal*'s impact on the five *Colon* factors); *Kleehammer v. Monroe Cnty.*, 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal*'s muster . . . ."); *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that *Iqbal* eliminated *Colon*'s personal involvement standard). Regardless of whether *Colon* or an *Iqbal*-limited standard applies, plaintiff has failed to allege any claim against defendant Stallone based upon his role as a supervisor.

**C.     Opportunity to Amend**

Based upon the foregoing, the Court finds that the complaint fails to state one or more claims against the Defendants upon which relief may be granted.  As a result, the complaint is dismissed in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

In light of his *pro se* status, the Court will afford Plaintiff the opportunity to file an amended complaint as to any claim that was dismissed without prejudice.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  Any amended complaint that Plaintiff submits in response to this Decision and Order must set forth a short and plain statement of the facts he relies on in support of his claim that specific individuals engaged in acts of misconduct or wrongdoing which violated his constitutional or statutory rights.  Plaintiff's amended complaint, which shall supersede and replace in its entirety the original complaint, must be a complete pleading which sets forth all of the claims that Plaintiff wants this Court to consider as a basis for awarding relief herein.

Plaintiff is advised that his failure to file an amended complaint **within thirty (30) days** of the filing date of this Decision and Order will result in dismissal of this action without prejudice without further Order of the Court.

**WHEREFORE**, the Court hereby

**ORDERS** that the Clerk is directed to amend the docket report to add the following as Defendants: M. Mazzoli, Auburn Correctional Facility; Bennett, Correctional Officer, Cayuga Correctional Facility; Hatsfeild, Correctional Officer, Cayuga Correctional Facility; and Stallone, Superintendent, Cayuga Correctional Facility; and the Court further

**ORDERS** that Plaintiff's claims regarding false misbehavior reports and verbal harassment are **DISMISSED with prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. §

15

1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983; and the Court further

**ORDERS** that Plaintiff is granted leave to file an amended complaint as directed above within **thirty (30) days** from the date of the filing of this Decision and Order; and the Court further

**ORDERS** that if Plaintiff fails to timely file an amended complaint as directed above, the Clerk shall, without further order of this Court, enter judgment indicating that the remainder of this action is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. In that event, the Clerk is directed to close this case; and the Court further

**ORDERS** that if Plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and the Court further

**ORDERS** that the Clerk shall serve a copy of this Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

Dated: June 26, 2014
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge